GERALD R. HADDEN, Appellant, v CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Respondent.

First Department, June 30, 1977

*Victor J. Herwitz (Michael J. Kopcsak* with him on the brief), attorney for appellant.

*James M. Leonard* of counsel *(McHugh, Heckman, Smith & Leonard,* attorneys), for respondent.

*Per Curiam.* Plaintiff-appellant, then employed by defendant-respondent, proceeding in accordance with the terms of defendant's pension plan, opted on January 23, 1968, to invoke its provision for "early retirement," which provided a lessening of benefits payable thereunder. Defendant's trustees began payment in February, 1968, but, in January, 1970, terminated the payments. Plaintiff has sued for reinstatement of the payments. Defendant has counterclaimed for disgorgement by plaintiff of moneys and other benefits received by plaintiff, in violation of company policy, from outsiders in business relationships with defendant as to which plaintiff had exercised a degree of influence. Plaintiff was successful on a motion for summary judgment, as was defendant on its counterclaims. The Court of Appeals reversed and remanded for trial of a narrowly limited issue: "Was Con Edison's waiver of its right to discharge Hadden before his retirement, knowingly induced by Hadden through material misrepresentation? [34 NY2d 88, 100*]." The facts, as disclosed on the motions for summary judgment, having been fully set forth in the decision of the Court of Appeals, will not be repeated here other than sketchily, except for those portions we deem essential to our conclusion.

Plaintiff, a vice-president of defendant and its superintendent of construction after 37 years of employment, was discovered by Luce, chief officer of defendant, to have been engaged in a conference with a public official and others for corrupt purposes, and which involved a bribe offer suggested by plaintiff. An investigation was ordered. Taxed with the accusation, plaintiff admitted it on January 6, 1968. He admitted to no other reprehensible act. Plaintiff then applied in his own handwriting on January 23 for early retirement, with reduced payments. He was entitled to do this by the plan's own provisions, still being an employee, undischarged as of that time, and having attained the requisite age and years of

---

* All page references herein are to the same case.

service. On January 26, again meeting with Luce, plaintiff indicated that he wished to apply for a supplemental pension in consideration of his years of service. As stated at Trial Term, "supplemental retirement benefits were not a matter of right * * * but of discretion with the pension committee." Plaintiff then asked what would happen if he withdrew his early retirement election. He was told that, if he did so, he would be discharged forthwith and forfeit all his pension rights. He did not withdraw the elections, the application was processed, and payments began and continued until January, 1970. In the interval, evidence had been given by plaintiff under a grant of immunity, and by others, at a criminal trial resulting from investigation of the corrupt meeting in which plaintiff had participated, and the full extent of his improper conduct had come to light. Defendant's trustees took action as follows:

"RESOLVED, That in the exercise of its authority and responsibility under the Company's Pension Plan for Retirement for Age as set forth in Article VII thereof, the Board of Trustees hereby interprets the Plan as providing that the Company has the right to suspend and terminate pension payments to a former officer when it becomes aware, following the termination of his employment, of facts which if known to it prior to such termination would have resulted in a termination by the Company for cause and a consequent loss of pension rights by the officer in question; and it was further RESOLVED, That the Board of Trustees is of the view that the case of Mr. Gerald R. Hadden is such a case as is described in the preceding resolution and therefore directs that no further payments be made to Mr. Hadden pursuant to the Company's Pension Plan for Retirement for Age."

Payments ceased forthwith, and plaintiff sued. When the case reached the Court of Appeals, defendant's first two main defenses were rejected: that the pension plan itself authorized the terminating resolution of the trustees, and that plaintiff's disloyalty and misconduct constituted failure of consideration. As to the first, it was held by the Court of Appeals (pp 93-95) that no authorization for the resolution existed either explicitly or implicitly, and that machinery provided in the plan for its modification had not been availed of. "However viewed, the board's action is unauthorized by the Pension Plan [p 95]."

"Con Edison's second argument, that Hadden's misconduct constitutes a 'failure of consideration' excusing its payment of

pension benefits, is also unpersuasive. * * * Other than the proviso that the Pension Plan shall not be available to an employee who has been discharged or released for cause, there is no other qualification upon the right of a retired employee who has met the age and service criteria to receive pension benefits [p 95]." "If the party in default has substantially performed, the other party's performance is not excused [p 96]." "In the present case, Hadden's consideration supporting Con Edison's promise to pay pension benefits is his 37 years of continued service * * * Weighing the factors involved we find that Hadden's performance has been substantial"; further, "that an analysis of the various factors involved leads to the conclusion that despite Hadden's financial dealings with contractors, Con Edison obtained substantially what it had bargained for in offering a Pension Plan—long and continuous employment [pp 97-98]." It is observed specifically in a footnote that "the Plan in question here has no statement requiring 'faithful' or 'loyal' service [p 95]."

The flavor of what the Court of Appeals had to say about the first two defenses may be experienced fully only by reading the entire text of the opinion. The foregoing sampling is given for the purpose of emphasizing what the issue for trial herein did *not* embrace. It had nothing to do with the reason assigned by the trustees for their unauthorized action, amounting to postemployment discharge for cause, and it had nothing to do with absence of consideration for the pension because of conduct considered disloyal to the company. The Court of Appeals summarized the factual issue presented by the new third defense, remanded for trial: "If true, the allegation that Hadden materially and fraudulently misrepresented his involvement in the preretirement discussions with Luce would warrant rescission of the parties' agreement that Hadden's retirement would be a mutually satisfactory resolution under the circumstances. Hadden denies this allegation, presenting a material issue of fact for jury determination [p 93]." And also: "We do find merit * * * in Con Edison's final contention that it should be permitted to rescind the agreement whereby it waived its right to discharge Hadden, if it is established that the waiver was induced by Hadden's fraudulent misrepresentations [p 98]." The threshold question, then, is whether Luce and Hadden actually reached an agreement that Hadden would not be discharged and, if so, whether that agreement was induced by an untruthful statement by Had-

den to Luce that the extent of Hadden's improper conduct was limited to his participation in the corrupt conference concerning a bribe.

At this juncture we point out that we find no merit in plaintiff's contention that he was disadvantaged by defendant's failure to assert, by way of amendment to its answer, the additional affirmative defense afforded by the the new turn given to the case by the Court of Appeals. There was no element of surprise once the opinion of our highest court came down and, as to absence of a bill of particulars which could have been demanded upon formal assertion of the defense, its place was taken by the information elicited by the full examination afforded plaintiff. The defense of rescission was as fully and fairly in the case as though formally pleaded and the particulars thereof furnished by way of a bill, and evidence taken thereunder was properly admissible.

After trial, the court found that Luce had agreed not to discharge Hadden for cause but to permit him to retire upon being assured by the latter that the corrupt conference was his only misconduct, and that plaintiff had deliberately concealed additional misconduct which would have constituted cause for discharge. The concealment being regarded as fraud, rescission was appropriate, it was ruled, and the act of the trustees in terminating pension payments was sustained. But all of this ignores one basic difficulty with the evidence on the new affirmative defense seeking rescission on the basis of fraudulent concealment. Proof of concealment there was, but not of an agreement not to discharge. The latter proof was essential to resolution of the trial in defendant's favor. It is a contradiction in terms to permit rescission of an agreement that never was.

The first session held by the participants on January 6, 1968, never involved the question of either discharge or retirement; Luce did not so testify. He merely explored the extent of Hadden's involvement. By the time these two held another discussion on January 26, plaintiff had already retired, having exercised the option available to him. The fact that, on January 26, three days after his handwritten election, he also executed one on defendant's printed form, does not in any wise vitiate the effect of the earlier document. "The provision under which Hadden retired unequivocally states than [sic] employee who attains the proper proportions of age and accredited service 'shall, upon filing a written election * * *

be retired * * * from the service of the Company.' Such wording indicates that retirement under the provision is at the employee's option once the age and service requirements are met. [Citation.] Other than the proviso that the Pension Plan shall not be available to an employee who has been discharged or released for cause, there is no other qualification upon the right of a retired employee who has met the age and service criteria to receive pension benefits [p 95]." And plaintiff had not been discharged, even though Luce may have considered that possibility. Indeed, this may well have been realized by Luce when, three days later, he indicated in answer to plaintiff's intimation that he might withdraw his election to retire that he, Luce, might then seize the opportunity to discharge him and thus effectively bar any right to a pension at all.

What had happened meanwhile casts further light on the factual issue. Luce testified that, while speaking to another Con Ed superior officer shortly after the January 6 meeting, he reported that matters were still in a state of suspense and that "I was not prepared to ask for Hadden's resignation just yet." There was an ongoing intensive investigation by prestigious special counsel, the developments of which were reported to Luce as they occurred. As a result, having learned that plaintiff had been less than frank about certain aspects of the investigation, Luce had determined by January 23 that he would press for plaintiff's resignation and would so report to his board at its regular monthly meeting, coincidentally on the very same day that plaintiff filed his handwritten election for early retirement.

Employment had terminated by the filing of plaintiff's election on January 23, and retirement automatically commenced then for this employee who had qualified under the plan's terms, subject only to formal ministerial acceptance by the trustees. All of this occurred before January 26, next meeting of Luce and Hadden. (There had been a brief encounter on January 8 at which nothing took place which would affect what thereafter occurred.) The meeting on January 26 was the only one at which an agreement not to discharge could have come into being. There was no occasion whatever at this meeting to reach an agreement as to something that could never take place unless plaintiff himself afforded Luce the opportunity to discharge him by withdrawal of his election to retire. Cannily, he did not afford Luce the opportunity.

There are other reasons in the record to indicate that Luce accepted the situation as one in which, from January 23 on, plaintiff was no longer subject to discharge and was actually in retirement. Luce's letter of February 1, 1968, formally stating the trustees' approval of retirement made no mention of reliance on any statement made by plaintiff. The resolution of the trustees by which they purported to terminate plaintiff's pension rights came about in 1970, by which time the full extent of plaintiff's derelictions had been revealed at the trial at which he had testified. It is at least doubtful whether, with this new knowledge, the trustees would have founded their action upon the tortured reason of "interpretation" of the pension plan rather than upon the solid ground later suggested by the Court of Appeals at a time before the factual pattern had been developed at a trial: rescission of an agreement upon discovery of fraud in its inducement. The choice of language used in the resolution of termination can be said by itself to be dispositive of whether an agreement had existed at all. And this without reaching the other indicia of nonexistence of an agreement. In ruling upon the issue for trial, the Court of Appeals, having before it only the adjudication of the summary judgment motions, spoke of the limited record as it then was: "Unresolved by the present record, however, are the exact conditions of this *apparent* offer and acceptance [p 99]." (Emphasis added.) Apparent only, because with the evidence at trial supplied not by plaintiff but by defendant in testimony and by documents, the trial record demonstrates that there could not have been an agreement to be rescinded. We cannot overemphasize that, when the Court of Appeals spoke, no factual basis had yet been found for the existence of an agreement not to discharge. Otherwise, why a remand to Trial Term at all? The record had not been developed at that point to the extent of providing a solid basis for any such finding. There is, therefore, nothing before us from which we may glean that our highest court, "implicitly" or otherwise, essayed on its own to find a *fact:* that something had been done by the parties which may be read as "a waiver by Con Edison."

It cannot be said that this case will stand as a victory for morality. However, the result follows from the circumstances. Defendant established a pension plan which provided plaintiff with an escape hatch to forestall his inevitable discharge. The discharge, actually decided upon by Luce, was kept in abey-

ance while the corporate hierarchy, which did not then have the full story, temporized. Having provided the opportunity of which plaintiff took advantage, defendant cannot now be heard to complain. However, the counterclaims seeking disgorgement of gifts provided to plaintiff by outsiders in business relationships with defendant were overwhelmingly established by the evidence, and judgment for defendant therefor will not be disturbed.

Having arrived at findings and conclusions differing in main with those of Trial Term, it is our duty to substitute them to the extent herein indicated for those we read in the record (7 Weinstein-Korn-Miller, NY Civ Prac, par 5522.04).

Judgment, Supreme Court, New York County (ASCH, J.), after nonjury trial, entered August 22, 1975, should be modified, on the law and the facts, to vacate the first three decretal paragraphs thereof ([a], [b], and [c]) which dismissed the complaint, approved defendant-respondent's action of January 27, 1970 rescinding pension rights of plaintiff-appellant, and declared those rights without force and effect from that date forward, substituting therefor judgment for plaintiff-appellant as prayed for in the complaint, and, as so modified, should be affirmed, without costs and without disbursements.

MURPHY, P. J. (dissenting in part). A trial court, upon a remand or remittitur, is without power to do anything except to obey the mandate of the higher court and to render judgment in conformity therewith. *(United States v Pink,* 36 NYS2d 961, 965.) The Court of Appeals remanded this proceeding for resolution of the following issue: "Was Con Edison's waiver of its right to discharge Hadden before his retirement, knowingly induced by Hadden through material misrepresentation?" (34 NY2d 88, 100.)

It should be stressed that the above-quoted issue is framed in language that conclusively indicates that the Court of Appeals had found that Con Edison had definitely "waived" its right to discharge Hadden before his retirement. Thus, the narrow issue presented for trial was limited to the nature and extent of Hadden's misrepresentations, if any, to Con Edison. There is ample evidence in the record to support Justice ASCH's finding that Con Edison's waiver was knowingly induced by Hadden's misrepresentations as to his lack of involvement in the criminal conspiracy.

The majority has found that Con Edison could not have

waived its right to discharge Hadden since the latter had already retired on January 23 , 1968. In the record before the Court of Appeals, Hadden stressed in his affidavit that his retirement papers had been submitted before his meeting of January 26, 1968 with Luce. Notwithstanding this representation, the Court of Appeals implicitly found that there had been a waiver by Con Edison. Moreover, is should be emphasized that the record contains evidence that Hadden made misrepresentations to Con Edison before he submitted his retirement papers. But for those prior misrepresentations, upon which Con Edison relied, Hadden would most likely have been discharged before he had an opportunity to submit his retirement papers. In the final analysis, the majority opinion rejects the Court of Appeals' finding of waiver on the part of Con Edison.

The judgment should be affirmed.

KUPFERMAN, LANE and MARKEWICH, JJ., concur in *Per Curiam* opinion; MURPHY, P. J., dissents in part in an opinion.

Judgment, Supreme Court, New York County, entered on August 22, 1975, modified, on the law and facts, to vacate the first three decretal paragraphs thereof ([a], [b], and [c]) which dismissed the complaint, approved defendant-respondent's action of January 27, 1970 rescinding pension rights of plaintiff-appellant, and declared those rights without force and effect from that date forward, substituting therefor judgment for plaintiff-appellant as prayed for in the complaint, and, as so modified, affirmed, without costs and without disbursements.

Settle order on notice.